IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
MAR 31 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| PAUL SMITH, JR., | } |
| Plaintiff, | } |
| v. | } CASE NO. CV-00-B-2620-S |
| BIRMINGHAM STEEL CORP., | } |
| Defendant. | } |

ENTERED
APR - 1 2003

MEMORANDUM OPINION

Currently before the court is a Motion for Summary Judgment filed by Birmingham Steel Corporation ("Birmingham Steel" or "defendant"). Paul Smith, Jr. ("Smith" or "plaintiff") filed this action alleging race discrimination in violation of 42 U.S.C. § 2000e, *et. seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981") and discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.* Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that Birmingham Steel's motion is due to be granted.[1]

---

[1] At the conclusion of oral argument, the court informed the parties of its intention to grant summary judgment in favor of defendant. The court requested that counsel for defendant prepare a proposed memorandum opinion for the court and required that counsel send a copy of the proposed opinion to counsel for plaintiff. Although the court has made some changes to the opinion prepared by defendant's counsel, it has adopted a large part of the proposed opinion. The court is aware of the admonition of the Eleventh Circuit that district courts not delegate "the task of drafting important opinions to litigants." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 n. 46 (11th Cir. 1997). This is an important opinion and the court had reached a firm decision as to the appropriate outcome before requesting a proposed opinion from defendant's counsel. In this case, however, the defendant drafted the opinion according to the express instructions of the court as to its contents. These instructions were stated to defendant's counsel, with plaintiff's counsel present, following oral argument. Although largely taken from the opinion proposed by defendant's counsel, the court personally reviewed this opinion and the opinion reflects the court's own conclusions.

38

Also before the court is a Motion to Strike Untimely Submission of Evidence filed by Smith and a Motion to Strike EEOC Determination and Portions of Plaintiff's Declaration filed by Birmingham Steel. Because the court allowed plaintiff to submit additional evidence in opposition to the supplemental evidence filed by defendant, plaintiff's motion to strike the submission as untimely is due to be denied. Defendant's motion to strike is due to be granted in part and denied in part.

## I. FACTUAL SUMMARY

In 1983, plaintiff was hired as a laborer by a predecessor to Birmingham Steel. (Smith Dep. at 20, attached as Def.'s Evid. Submission in Support of its Mot. for Summ. J. ("DX") Tab A.) In 1990, Smith bid on and received a position as second helper in the Melt Shop.[2] (*Id.*. at 32, 34.) In 1993, Smith bid on and was promoted to the first helper position. (*Id.* at 35.) In 1994, Smith bid down to the second helper position. (*Id.* at 20, 32, 34, 35, 39, 53.)

In 1996, while holding the second helper position, Smith suffered a gradual deterioration of the ability to use his arm. (Smith Dep. at 55.) On two occasions, Smith informed Birmingham Steel's Safety Director, Ginger Farrar, that he was having trouble gripping things. (*Id.* at 51, 58-59; Virginia Ann Taylor[3] Aff. ¶¶ 2, 4, 5, attached as DX Tab H.) Farrar asked Smith if he could perform his job, and Smith responded "yes." (Smith Dep. at 59.) Smith was

---

[2] The Second Helper position required plaintiff to "get the fork truck, bring in [the] material, bring in [the] electrodes, [] get the manganese, fill up the manganese bucket, get the crane and hook it up and put this stuff on the floor." (Smith Dep. at 37.)

[3] Taylor was formerly named Ginger Farrar, and hereinafter will be referred to as "Farrar." (Farrar Aff. ¶ 1.)

2

able to perform all the duties of the second helper position until his arm collapsed[4] on June 25, 1997. (*Id.* at 51, 55-59, 61, 65; Farrar Aff. ¶¶ 3-5.) Smith gave Farrar the following statement dated June 25, 1997:

> To whom it may concern, out of the seven years I have worked over in the melt shop in the intense heat. My muscles in my right hand has collapsed and causes me to loose strength in my right hand and causes my right arm to be numb, which comes from holding the oxygen pipe and withstanding the heat. Sometimes I find it hard to turn a key. And I have no control over my two litter [sic] fingers. Paul Smith, Jr.

(*Id.* at 61-63, 66, Ex. 2.)

As a result of Smith's complaints about his arm, Farrar sent Smith to the company doctor, Dr. Grabowski. (Smith Dep. at 66-67, 69; Farrar Aff. ¶5.) Dr. Grabowski had previously visited Birmingham Steel's plant and reviewed all the duties of each job, including the second helper position performed by Smith. (Farrar Aff. ¶ 5; Grabowski Stmnt. ¶¶ 2, 4, attached as DX I.) Dr. Grabowski restricted Smith to "light duty" work and referred him to a specialist, Dr. Kissel. (Farrar Aff. ¶5; Smith Dep. at 69-70.) Smith was diagnosed as having cubital tunnel syndrome, believed to be caused by repetitive motion. (Farrar Aff. ¶ 6.) Dr. Kissel performed surgery on Smith's arm on July 28, 1997. (Smith Dep. at 114.) Smith did not have full use of his arm for at least three months following his surgery. (*Id.* at 115.)

Prior to the collapse of Smith's arm on June 25, 1997, five or six Birmingham Steel employees and other individuals paid Smith to replace headliners (interior roofs) in their cars. (Smith Dep. at 91-96.) Farrar informed Dr. Grabowski that Smith had performed the headliner work, and Dr. Grabowski considered this information in reaching his decision that plaintiff's

---

[4] Smith asserts that his finger got numb, he was "losing grip," the muscles in his right hand had "sunk in," and he had no control over his little finger or thumb. (Smith Dep. at 55.)

3

injury was not work-related. (Farrar Aff. ¶ 7; Smith Dep. at 91-96, 123-125, Ex. 10; Smith's Worker's Compensation Dep. ("Smith WC Dep") at 25, 105, attached as DX Tab B; Grabowski Stmnt. ¶¶ 4, 5.)

In early to mid-July 1997, Dr. Grabowski informed Farrar of his conclusion, based on Dr. Grabowski's knowledge of the job duties and the nature of Smith's condition, that Smith's medical condition was not work-related. (Grabowski Stmnt. ¶¶ 4-5.) Dr. Grabowski told Farrar that he had consulted with Dr. Kissel, who according to Dr. Grabowski, could not determine the cause of Smith's condition. (Farrar Aff. ¶ 8; Grabowski Stmnt. ¶¶ 5-6; Smith Dep. at 75; Tr. of Smith's WC Trial ("WC Trial Tr.") at 88, attached as DX Tab S.) In his discussion with Farrar, Dr. Grabowski specifically noted that the second helper duties were not repetitive in nature. (Farrar Aff. ¶ 5.) Other second helpers also informed Farrar that there were no repetitive motions used in performing the second helper position. (*Id.*)

Based on the information provided to Farrar, including Dr. Grabowski's opinion that Smith's condition was not work-related, Birmingham Steel determined in mid to late July 1997 that Smith did not have a work-related injury. (Farrar Aff. ¶ 9.) Thus, his worker's compensation benefits were denied. (*Id.*) Farrar informed Smith that he would not receive worker's compensation benefits. (Farrar Aff. ¶ 10.) On or about July 23, 1997, Farrar assisted Smith with his application for short-term disability benefits, which he received, and Smith's application for FMLA leave, which was granted. (*Id.*; Smith Dep. at 70-72, 85, 87, Ex. 3, 4, 5, 7, 8.)

Birmingham Steel does not provide light duty to employees with non-work-related injuries. (Farrar Aff. ¶ 10.) Employees who have suffered non-work-related injuries must be

4

one hundred percent released before returning to work. (*Id.*) Employees with work-related injuries who are not one hundred percent released to return to work by their physician are provided light duty at their normal rate of pay until the employees reach maximum medical improvement. (Farrar Aff. ¶ 10; McArdle Dep. at 32, 36, attached as DX Tab C; McArdle Aff. ¶ 5, attached as Def.'s Supplemental Evidentiary Submission in Support of Mot. for Summ. J. ("DX Supp.") Tab C). Accordingly, Smith was placed on a FMLA leave of absence beginning on July 16, 1997. (Smith Dep. at 76.) In a letter dated August 6, 1997 to Farrar, following up on a previous conversation, Dr. Grabowski stated in part that neither he nor Dr. Kissel could confirm the cause of Smith's condition. (Farrar Aff. ¶ 12, Ex. B.)

Smith was fully released to return to work on November 28, 1997. (Farrar Aff. ¶ 14; Smith Dep. at 76, 128-129, Ex.12.) After Smith returned to his second helper position, he began continuously complaining to his supervisor, Levis Green, of arm pain. (Smith Dep. at 131-47, Ex. 13; Preston Dep. at 14, attached as DX Tab D.) In a note pad he carried, Smith documented from late November 1997 to early March 1998 numerous and consistent complaints of arm pain that he made to Levis Green. (*Id.*) On March 3, 1998, the Melt Shop had a "down" day, which occurs when the furnace is cleaned. (Smith Dep. at 147-57.) On this down day, Smith and other Melt Shop employees performed more physical and rigorous work, including shoveling, jackhammering and hauling materials.[5] (*Id.*) After the down day, Smith informed Green that his arm was hurting more than usual. (*Id.* at 151-52, Ex. 15.)

---

[5] Although Smith's complaint alleges that he was forced to do harder work in an effort by Birmingham Steel to injure him, Smith admitted in his deposition that others were asked to perform the same duties as he, the duties were customary for Melt Shop employees, and he does not believe he was assigned the job duties in an attempt by Birmingham Steel to injure him. (Smith Dep. at 147-51, 160-61.)

On March 3, 1998, during a meeting between Plant Manager Tom McArdle, Melt Shop Superintendent John Van Giessen, Human Resources Manager Paula Preston, and Safety Manager Ginger Farrar, McArdle and Farrar decided to remove Smith from the second helper position as a result of his continuous complaints of arm pain. (Farrar Aff. ¶ 15.) At this time, Smith's physician had given him one hundred percent release to work. (*Id.*) However, based on Smith's continuous complaints, McArdle and Farrar were concerned that Smith might permanently injure his arm. (*Id.*; Preston Aff., Ex. A, attached as DX Tab K; Smith Dep. at 155-156, 167; McArdle Dep. at 27-28, 31, 72-73; Preston Dep. at 7-9, 13.) McArdle and Taylor decided to place Smith in a laborer position, the only available position. (Smith Dep. at 186.) As a natural consequence of being placed in the laborer job, Smith was paid as a laborer. (McCardle Supplemental Aff. ¶¶ 4, 6.) At the time Smith was demoted to the laborer position, he was instructed to bid on vacant positions so that the company could place him in a higher paying job as soon as possible. (Farrar Aff. ¶ 15.) McArdle and Farrar believed that Smith could perform jobs other than the second helper position at Birmingham Steel. (*Id.*)

When a higher paying tagger position became available in April 1998, Farrar asked Smith to bid on the position. (Smith Dep. at 206-07, 212.) Smith received the tagger position on May 5, 1998. (*Id.* at 175-76, 215-16.) Subsequently, Smith bid on and received a promotion to a shipping position. (*Id.* at 224.)

On September 16, 1997, Smith filed a worker's compensation action against Birmingham Steel in the Circuit Court of Jefferson County, Alabama. Smith alleged that his cubital tunnel syndrome, which resulted in him being off work beginning in July 1997, was work-related. (Smith Dep., Ex. 9.) In an Order dated December 2, 1998, Judge Arthur J. Hanes, Jr., held that

6

Smith had suffered an on-the-job injury on July 16, 1997, that Smith had fully recovered from the injury and suffered no permanent physical impairment, and that Smith was "temporarily totally disabled from July 16, 1997 until November 28, 1997." (Order, attached as DX Tab R.) Smith was awarded $4,112.00 in worker's compensation benefits. (*Id.*)

On April 2, 1998, Smith filed an EEOC charge alleging race and disability discrimination. (Smith Dep. at 183-84, DX 18).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986.) The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; see Fed.R.Civ.P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

In deciding a motion for summary judgment, the role of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury. *Id.* Therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. The nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. MOTION TO STRIKE EEOC DETERMINATION AND PORTIONS OF PLAINTIFF'S DECLARATION

Birmingham Steel moved to strike an Amended Determination by the EEOC. (*See* Def.'s Mot. to Strike EEOC Determination and Portions of Pl.'s Decl. ("Def.'s M/Strike") at 1-6.) Defendant also moved to strike portions of plaintiff's declaration submitted in opposition to Birmingham Steel's motion for summary judgment. (*Id.* at 7-14.)

#### A. EEOC Determination

Defendant moved to strike as conclusory[6] the Equal Employment Opportunity Commission's ("EEOC") Amended Determination wherein the EEOC found reasonable cause for believing that Birmingham Steel discriminated against plaintiff. (Def.'s M/Strike at 1; EEOC

---

[6] Defendant also alleges that the EEOC's determination is untrustworthy and offers evidence that the EEOC has a mandate to increase the number of "for cause" determinations in the Birmingham office and because EEOC investigators' performance is evaluated in part by the number of "for cause" findings they make. (Def.'s M/Strike at 4-5.) Because the court finds that the determination is due to be stricken for the reasons discussed, the court need not address defendant's allegation.

8

Amended Determination, attached as Ex. 2 to Pl.'s Br. in Opp'n to Def.'s Mot. For Summ. J. ("Pl.'s Br.").) The Amended Determination, signed by Cynthia Pierre, District Director for the EEOC, states only plaintiff's allegations and Pierre's conclusions without discussion about the evidence reviewed in reaching the decision. (Def.'s M/Strike at 1.)

Because the court finds that the EEOC's Amended Determination contains only conclusory allegations and no factual content or basis for reaching those conclusions, defendant's Motion to Strike the EEOC Determination will be granted.

### B. Motion to Strike Portions of Plaintiff's Declaration

Defendant moved to strike certain portions of Smith's Declaration submitted in opposition to defendant's motion for summary judgment. (*See* Def.'s M/Strike at 6-14.) After a review of the statements made by Smith in his declaration, the court concludes that defendant's motion is due to be granted in part. The statements in ¶¶ a, b, c, d, e, f, g, i, j, and k. of plaintiff's Declaration are due to be stricken because they contain conclusory assertions, are not based on personal knowledge, or are hearsay. The court also finds that defendant's motion should be denied in part. (*Id.* ¶¶ b, h.) Specifically, the court finds that plaintiff's statement that "[a]fter [he] reported pain in [his] arm resulting from the work [on March 3, 1998], [his] supervisor John Van Giessen told [him] that Tom[my] Butler, Rolling Mill Superintendent, and Ginger Farrar wanted [him] removed from [his] Second Helper job" is not hearsay and is admissible. (*Id.* ¶ b.) The court denies the motion as to the following statement:

> Later, in approximately 1999, when the company created a job with virtually identical duties to mine, the company paid Mike Hughes, a white individual, incentive pay in addition to the hourly pay of $12.36 per hour. When I did similar duties in 1998, the hourly pay was $7.75, and there was no incentive pay. I have reviewed the Memorandum entitled Bobcat Operator Duties submitted with the

9

company's Motion for Summary Judgment. My job in the laborer position was very similar.

(*Id.* ¶ h.) Defendant's motion to strike will be granted in part and denied in part.

### IV. RACE DISCRIMINATION CLAIM ARISING OUT OF DENIAL OF LIGHT DUTY BETWEEN JULY AND NOVEMBER 1997

Smith alleged in his complaint that he was denied light duty work between July 16, 1997, and November 1997 because of his race, African-American, in violation of Title VII and § 1981. Birmingham Steel argues that plaintiff's claim is time-barred by the applicable limitations periods under both statutes, and that Smith has failed to present direct or circumstantial evidence of race discrimination. The court agrees that Smith's claim is time-barred and that he has failed to establish direct or circumstantial evidence of race discrimination. Further, Smith acknowledges that this claim is due to be dismissed. (Pl.'s Br. at 21 ("The claim regarding light duty in July, 1997, was remedied by the Circuit Court. It is not at issue here.").)

### V. RACE DISCRIMINATION CLAIMS ARISING OUT OF MARCH 1998 DEMOTION FROM SECOND HELPER TO LABORER

Smith contends that he was discriminated against with respect to his race when he was removed from the second helper position and placed in the laborer position in March 1998.

#### A. SECTION 1981 CLAIM

Smith filed his lawsuit on September 18, 2000. However, Smith's § 1981 claim arising out of his March 3, 1998, demotion is time-barred because the applicable statute of limitations period for such actions is two years. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987) (§ 1981 has same statute of limitations as § 1983); *Jones v. Pruett & Mauddin*, 876 F.2d 1480,

1484 (11th Cir. 1989) (§ 1983 has a two year statute of limitations). Furthermore, Smith's § 1981 claim is due to be dismissed on the same grounds as his Title VII claims.[7]

### B. TITLE VII PRIMA FACIE CASE

To establish a prima facie case of discrimination, a plaintiff may present direct, statistical or circumstantial evidence.[8] *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989). A prima facie case requires evidence that is adequate to create an inference of illegal discrimination. *International Bhd. of Teamsters v. U. S.*, 431 U.S. 324, 358 (1977). To establish a prima facie case, Smith must show that he was replaced by a white employee or that a similarly situated white employee was treated more favorably than Smith. *See Weaver v. CASA Gallards, Inc.,* 922 F.2d 1515, 1525 (11th Cir. 1991), *superceded by statute on other grounds as discussed, Munoz v. Oceanside Resorts, Inc.,* 223 F.2d 1340, 1347 (11th Cir. 2000). Smith has not presented evidence that he was replaced by a white employee in his former second helper position. To make the comparison that defendant treated similarly situated employees outside plaintiff's protected class more favorably than himself, Smith must demonstrate that he and the employees to which he refers are similarly situated in all relevant respects. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). If a plaintiff fails to show that he is

---

[7] Although the statutory language and remedies of 42 U.S.C. § 1981 are distinct from Title VII, the allocation of the burdens of proof and the analysis for determining whether a defendant employer unlawfully discriminated against an employee are the same. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). *See also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

[8] Smith has presented neither statistical evidence nor direct evidence of discrimination. Thus, the court will examine the evidence under the allocation of burdens and order of presentation of proof for Title VII disparate treatment cases set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973), *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-253 (1981), and *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000).

similarly situated in all relevant respects to the non-minority comparators, summary judgment is appropriate. *Id.*

While plaintiff is clearly within a protected class, he has failed to establish a prima facie case. Specifically, plaintiff has not produced evidence of a similarly situated white employee who was 100% released to work, continuously complained of pain, and who was not removed from his or her position or who was otherwise treated more favorably than Smith. Although Smith alleges that white Birmingham Steel employees who received light duty work for work-related injuries are comparators,[9] these employees were provided light duty pursuant to Birmingham Steel's policy of providing light duty work for work-related injuries until the employee reached maximum medical improvement. Therefore, these employees are not similarly situated to Smith, who was not entitled to light duty work under Birmingham Steel's policy because Birmingham Steel determined that his injury was non-work-related.

Smith also alleges that Mark Barnette, a white employee, is a relevant comparator. (Pl.'s Br. at 17.) After Barnette was fully released by his physician to return to work following surgery on his toe, his physician told him that he should keep his toe dry. (Barnette Dep. at 10, attached as DX Tab F.) At the time, Barnette was one of two pulpit operators. (*Id.* at 13.) One pulpit operator monitors the rolling mill floor while sitting inside the pulpit, and the other pulpit operator works on the often wet rolling mill floor. (*Id.* at 8-9.) The two pulpit operators customarily alternate these duties during their shift. (*Id.*) After Barnette's surgery, Barnette and the other pulpit operator, Orin Daniels, agreed among themselves that Daniels would work the

---

[9] The court notes that Birmingham Steel presented evidence that it had provided light duty work with no reduction in pay to nine African-Americans who suffered work-related injuries. (Preston Aff. ¶ 5).

entire shift on the floor and allow Barnett to stay in the pulpit so that he could keep his toe dry. (*Id.* at 10-11, 13.) Although Barnette informed his supervisor, Tommy Butler, of his agreement with Daniels, Tom McArdle and Ginger Farrar were not aware of the arrangement. (*Id.* at 12-13; McArdle Dep. at 40; McArdle Aff. ¶ 5.)

Barnette is not similarly situated and a relevant comparator to Smith. Barnette was not provided light duty by Birmingham Steel, but rather entered into an agreement with a co-employee to slightly modify his duties. Moreover, the decision-makers with respect to Smith's demotion, McArdle and Farrar, had no knowledge of the agreement between Barnette and Daniel and therefore did not have an opportunity to correct any potential policy violation. *See Jones v. Gerwins,* 874 F.2d 1534, 1542 (11th Cir. 1989) (holding that to establish a prima facie case, decision-maker must have been aware of the policy violation and consciously overlooked it). Because Smith has offered no evidence that a person outside his protected class was treated more favorably than himself, he has failed to establish a prima facie case of race discrimination.

### C.   PRETEXT

It is undisputed that Birmingham Steel removed Smith from the second helper position and placed him in the laborer position because of Smith's continuous complaints of arm pain and Birmingham Steel's concern that he would further injure his arm. In fact, in Smith's opposition

brief, he concedes that he was "demoted because of the risk of a new injury." (Pl.'s Br. at 13.)[10] In light of this concession, Smith can hardly establish that he was demoted due to his race.

Nevertheless, Smith contends that he was the subject of race discrimination. According to Smith, there were two decisions made with respect to his demotion to the laborer position: one decision to place him in the laborer position, and a second decision to pay him as a laborer instead of continuing to pay him at the higher rate of pay for a second helper position. (Pl.'s Br. at 16.) Smith contends that he was treated differently than white comparators because Birmingham Steel paid him at the lower laborer's pay. (*Id.* at 16-18.) However, the undisputed evidence is that McArdle and Farrar decided to place Smith in the laborer position, and Smith was paid as a laborer as a natural consequence of holding the laborer position. (McArdle Supp. Aff. ¶ 6; Preston Aff ¶ 6, Ex. A). Plaintiff offers no evidence to suggest that defendant's decision to put him in the laborer position or the consequent lowering of his pay was motivated by race.

Smith also argues that Birmingham Steel's asserted good faith belief that Smith did not have a work-related injury as its legitimate, non-discriminatory reason for demoting Smith and paying him laborer pay is pretext for unlawful discrimination because Smith's injury was work-related as a matter of law.[11] (Pl.'s Br. at 10.) However, this was not Birmingham Steel's

---

[10] Smith testified in his deposition in his worker's compensation case that he was removed from the second helper position because he reported his hurt arm to Birmingham Steel. (Smith WC Dep. at 96.) During his deposition in this case, Smith testified that he believed he was placed in the laborer position to decrease Birmingham Steel's accident ratio. (Smith Dep. at 170-71.)

[11] Judge Hanes made this determination following plaintiff's worker's compensation trial. (December 2, 1998, Order, attached as DX Tab R.)

14

articulated reason for Smith's demotion.[12] Rather, Birmingham Steel contends it demoted Smith because of his continuous complaints of arm pain and concerns about future injury. (Farrar Aff. ¶ 15.) In fact, McArdle, the plant manager and one of the decision-makers, testified that whether Smith's March 1998 injury was work-related was not even discussed during the March 3, 1998, meeting wherein McArdle and Farrar decided to demote Smith to the laborer position. (McArdle Dep. at 61-65.) McArdle testified that whether Smith had a work-related injury in March 1998 was irrelevant to the decision to demote Smith because Smith had been 100% released by his physician. (McArdle Dep. at 72-73.) Even assuming Smith's injury was work-related, under Birmingham Steel's policy, he would not have been entitled to light duty at the second helper rate of pay because he was 100% released to return to work; Birmingham Steel only assigned light duty work until the employee reached maximum medical improvement. (McArdle Supp. Aff. ¶ 5.) Because Smith failed to present sufficient evidence of pretext to rebut Birmingham Steel's legitimate, non-discriminatory reason that it demoted Smith because of his continuous complaints of pain, his race discrimination claim is due to be dismissed.

## VI. AMERICANS WITH DISABILITIES ACT CLAIM

Smith also contends that he was discriminated against in violation of the ADA as a result of his demotion to the laborer position. (Pl.'s Br. at 19-20.)

---

[12] Birmingham Steel did articulate its good faith belief that Smith had a non-work related injury as its legitimate, non-discriminatory reason for denying Smith light duty work from July through November 1997. However, as discussed above, the denial of light duty during July through November 1997 was a separate decision from the decision to demote Smith to the laborer position in March 1998.

15

### A. PERCEIVED DISABILITY

The ADA protects from discrimination qualified individuals with a disability, individuals who are regarded or perceived as having a disability, and individuals with a record of a disability. 42 U.S.C. § 12102(2). To fall within the "perceived" disability category, the employee must be regarded as having a physical or mental impairment that substantially limits a major life activity. (*Id.*) Smith contends that Birmingham Steel perceived him as having such a disability. (Smith Dep. at 211, Ex. 2.)

Although Smith does not identify the major life activity in which Birmingham Steel allegedly perceived him to be substantially limited, the court presumes that Smith contends that he was substantially limited in the major life activity of working. Birmingham Steel removed Smith from the second helper position and placed him in the laborer position. However, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523 (1999); *see Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366 (11th Cir. 1998) (holding that for an employee to be regarded as disabled, the employer must believe that the employee is unable to perform a class of jobs, not just a single job).

Birmingham Steel did not believe Smith was unable to perform a broad class of jobs, or any job at Birmingham Steel other than the second helper position. (*See* Taylor Aff. ¶ 15.) Smith was placed in the laborer position and was subsequently promoted to the tagger and shipping positions. (Smith Dep. at 186; Taylor Aff. ¶ 15; McArdle Dep. at 61.) When Smith was placed in the laborer position, he was told to bid on other positions in the plant because McArdle and Taylor believed Smith could perform those jobs. (Smith Dep. at 206, 207, 212;

Taylor Aff. ¶ 15.) Because plaintiff has not offered evidence on which a reasonable jury could find that Birmingham Steel perceived Smith as being substantially limited in the major life activity of working, Smith is not protected under the ADA.

### B. REASONABLE ACCOMMODATIONS

Smith alleges that he was denied "reasonable accommodations" as a result of Birmingham Steel "preventing [him] from returning until he was 100% recovered" and by "assigning [him] to heavier duties than the particular Second Helper position he had held prior to the injury."[13] (*See* Compl.)

The ADA does not require employers to accommodate perceived disabilities. *See, e.g., Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir. 1999) (holding that "'regarded as' disabled plaintiffs are not entitled to reasonable accommodations"); *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999) (noting that "regarded as" disabled plaintiffs are not entitled to a reasonable accommodation); *Newberry v. East Texas State Univ.*, 161 F.3d 276, 280 (5th Cir. 1998) (stating that "an employer need not provide reasonable accommodation to an employee who does not suffer from a substantially limiting impairment merely because the employer thinks the employee has such an impairment"); *Mack v. Strauss*, 134 F. Supp. 2d 103, 111 n. 3 (D.D.C. 2001) ("It is doubtful that plaintiff can even claim failure to accommodate given its logical inconsistency with a claim that he was regarded as disabled.").

---

[13] Smith testified that he was not assigned heavier duties than he performed in the second helper position required. (Smith Dep. at 160-161). This testimony is inconsistent with his claim.

17

Finally, because Smith did not request any type of accommodation, (Smith Dep. at 240), Birmingham Steel was not obligated to provide him with a reasonable accommodation. *See Gaston v. Bellingraph Gardens & Home, Inc.,* 167 F.3d 1361 (11th Cir. 1999) ("Thus, both our precedent and the EEOC's interpretive guidelines clearly provide that the initial burden of requesting an accommodation is on the employee. Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that [his] employer has discriminated against [him]."). Therefore, Smith's reasonable accommodation claim is due to be dismissed.

## VII. CONCLUSION

Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that Birmingham Steel's Motion for Summary Judgment is due to be granted. Plaintiff's motion to strike the submission as untimely is due to be denied. Defendant's motion to strike is due to be granted in part and denied in part. An order in accordance with this opinion will be entered contemporaneously herewith.

**DONE** this 31st day of March, 2003.

SHARON LOVELACE BLACKBURN
United States District Judge